LOVE MACIONE, CSBN 200538
SCHEIN & CAI, LLP
111 N. MARKET STREET, STE. 1020
SAN JOSE, CA 95113
T.: (408) 436-0789
F.: (408) 436-0758
lmacione@sacattorneys.com


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| CAREMAX, Inc.; and SEN GUO, Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC HOLDER, Attorney General; | ) | Case No. 3:13-cv-02412-CRB |
| JEH JOHNSON, Secretary of Homeland Security; | ) | |
| LORI SCIALABBA, Acting Director, | ) | PLAINTIFFS' MOTION FOR |
| United States Citizenship and Immigration Services; | ) | SUMMARY JUDGMENT |
| KATHY BARAN, Director, USCIS California | ) | |
| Service Center, | ) | |
| | ) | Hon. Charles R. Breyer |
| Defendants. | ) | |
| _____ | ) | |

PLEASE TAKE NOTICE that on April 11, 2014, at 10:00 am, or as soon thereafter as

the parties may be heard, Plaintiffs will reply to Defendant's motion for summary judgment and

bring a cross- motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.  The hearing will take place before the Honorable Charles R. Breyer in Courtroom 6,

17th Floor, at 450 Golden Gate Street, San Francisco, California.   This motion is based on the

Memorandum of Law In Support of Plaintiffs' Motion for Summary Judgment, the Certified

Administrative Record filed with this Court on November 29, 2013, as well as all pleadings,

papers, and files in this action, and any oral argument as may be presented at the hearing on this

motion.  Plaintiffs respectfully request that this Court grant summary judgment in their favor.

## TABLE OF CONTENTS

I. Introduction ........................................................................................................................6

II. Statement of the Issues .......................................................................................................6

III. Statement of Undisputed Material Facts ............................................................................7

IV. Summary of the Argument ................................................................................................ 8

V. Argument ......................................................................................................................... 12

A.  Standard and Scope of Review ......................................................................................12

B.  Statutory and regulatory background governing H-1B non-immigrant

visas .......................13

C. Caremax's petition was approvable because Guo holds the equivalent of a U.S.
   bachelor's degree as required for entry level employment in a "specialty occupation." .........

D. Caremax's petition should have been approved because the proffered position of a
   "public relations specialist" is a "specialty occupation" under the four regulatory
   criteria. .................................................................................................................... 17

VI. Conclusion ......................................................................................................................19

Certificate of Service

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TABLE OF AUTHORITIES

CASES

All Aboard Worldwide Couriers, Inc. v. Attorney General,
   8 F. Supp. 2d 379 (S.D.N.Y. 1998) ..........................................................................

Defensor v. Meissner,
   201 F.3d 384 (5th Cir. 2000) ...................................................................................

EG Enters., Inc. v. Dep't of Homeland Security,
   467 F. Supp. 2d 728 (E.D. Mich. 2006) ...................................................................

Fence Creek Cattle Co. v. Forest Serv.,
   602 F.3d 1125 (9th Cir. 2010) ...........................................................................12

GCCG Inc. v. Holder,
   2013 WL 6175180 (N.D. Cal. 2013) ...............................................

Judulang v. Holder, 132 S.Ct. 476(2011)……………………………….....................................12

Kazarian v. USCIS, 596 F. 3d. 1115 (9th Cir. 2010)……………………………………….

Matter of Precision Programming, Inc., EAC 9220251006 (AAU Apr. 22, 1993)…….

Matter of Sea, Inc., 19 I. & N. Dec. 817 (Comm'r 1988)..........................................................

Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983). ...........

Nw. Motorcycle Ass'n v. U.S. Dep't Agric., 18 F.3d 1468 (9th Cir. 1994)……………………12

Gifford Pinchot Taskforce v. U.S. Fish & Wildlife Serv.,
   378 F.3d 1059 (9th Cir. 2004) .....................................................
Residential Finance v.USCIS. (D.Ohio, March 12, 2012)…………………………………….

Royal Siam Corp. v. Chertoff, 484 F.3d 139 (1st Cir. 2007) ..................................................

Shanti , Inc. v. Reno, 36 F. Supp. 2d 1151 (D. Minn. 1999) ............................................

## STATUTES

5 U.S.C. §706(2)(A) ............................................................................. 12

8 U.S.C. § 1101(a)(15)(H)(i)(b) ..........................................................12.

8 U.S.C. § 1103(a)(1) .........................................................................

8 U.S.C. §1184(i)(1)(A) .....................................................................

8 U.S.C. ' 1184(i)(1)(A)(1) ................................................................

8 U.S.C.1184(i)(1)(A)(2) ....................................................................

8 U.S.C. ' 1184(i)(1)(C) .....................................................................

8 U.S.C. ' 1184(i)(1)(B) .....................................................................

8 U.S.C. ' 1184(i)(2)(B) ...................................................................

## REGULATIONS

8 C.F.R. ' 214.2(f)(4)(ii) ...................................................................

8 C.F.R. ' 214.2(h)(4)(ii) ...................................................................

8 C.F.R. 214.2(h)(4)(iii)(A) ...............................................................

8 C.F.R. 214.2(h)(4)(iii)(A)(1) ...........................................................

8 C.F.R. 214.2(h)(4)(iii)(A)(2) .........................................................

8 C.F.R. ' 214.2(h)(4)(iii)(A)(3) ..........................................................

8 C.F.R. ' 214.2(h)(4)(iii)(A)(4) ..........................................................

8 C.F.R. ' 214.2(h)(4)(iii)(C) ..............................................................

8 C.F.R. ' 214.2(h)(4)(iii)(C)(1)

8 C.F.R. ' 214.2(h)(4)(iii)(C)(2) ..........................................................

8 C.F.R. '214.2(h)(4)(iii)(C)(3) ..........................................................

8 C.F.R. ' 214.2(h)(4)(iii)(C)(4) ...............................................................................

8 C.F.R. ' 214.2(h)(4)(iii)(D) ..................................................................................

8 C.F.R. ' 214.2(h)(4)(iii)(D)(1)

8 C.F.R. ' 214.2(h)(4)(iv)(A) ....................................................................................

OTHER AUTHORITIES

Department of Labor, Bureau of Labor Statistics

     OCCUPATIONAL OUTLOOK HANDBOOK ("OOH")  ...................................................8

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Plaintiffs, Caremax, Inc. ("Caremax") and Sen Guo ("Guo") (collectively "Plaintiffs"), challenge the decision by United States Citizenship and Immigration Services ("USCIS" or "agency") denying Caremax's I-129 petition for an H-1B non-immigrant visa on behalf of Guo. Caremax filed a petition for an H-1B visa in order to hire Guo as a "Public Relations Specialist." USCIS denied Caremax's petition on two grounds. USCIS found that Caremax failed to establish that Guo qualified to perform services in a "specialty occupation." USCIS also found that the position offered to Guo was not a "specialty occupation." Plaintiffs brought this suit before this Court under the Administrative Procedures Act ("APA"). Defendants have moved for summary judgment.

The agency abused its discretion, resulting in a decision that is arbitrary, capricious, and contrary to law and the agency's own regulations. Therefore, this Court should dismiss Defendant's motion for summary judgment and grant summary judgment in favor of Defendants.

### II. Statement of the Issues

1) Did USCIS abuse its discretion in denying Caremax's H- 1B visa due to Caremax's failure to show that Guo was qualified?

2) Did USCIS abuse its discretion in denying Caremax's H-1B visa by finding that the proffered public relations specialist position was not a specialty occupation?

6

### III. Statement of Undisputed Material Facts

Caremax, located in San Rafael, California, is an adult health services corporation, providing care to adults with developmental disabilities.   Certified Administrative Record ("A.R.") 242-43. Guo is a Chinese national who last entered the United States on or about February 6, 2011, on an F-1 student visa.  A.R. 248-50.  On July 1, 2008, Guo completed a degree at the Civil Aviation University located in China, where, according to his transcript, Guo studied English.  A.R. 254-57.  Guo has worked at Caremax pursuant to his Optional Practical Training employment authorization that he received after attaining his Masters Degree at Monterey Institute of International Studies.  A.R. 231-235, 250.  He also enrolled in a Masters Degree program at Dominican University, studying Education.  A.R. 231-235, 298-300.   USCIS admits that DHS records show that this education history is accurate.  A.R. 150.

On April 1, 2012, Caremax filed Form I-129, Petition for a Nonimmigrant Worker, on behalf of Guo, seeking to change Guo's immigration status in the United States in order to employ him as a "Public Affairs Specialist."  A.R. 220-28.  In that position, Caremax stated that Guo would engage in several tasks, including preparation, editing, and translation of publications; responding to public and media requests; promoting and advertising the company; and conducting appearances to promote the company's goodwill.  A.R. 243.  Caremax provided a copy of the Form ETA 9035, Labor Condition Application for Nonimmigrant Workers, ("labor certification") that the Department of Labor ("DOL") certified April 11, 2012.  A.R. 236-41.  On October 16, 2012, USCIS issued the first Request for Evidence ("RFE"), asking for a more detailed job description as well as additional evidence to establish that the proffered public relations specialist position is a "specialty occupation" under the Immigration and Nationality Act ("Act").  A.R.

213-18.

On January 8, 2013, Caremax responded to the first RFE.[1]  A.R. 151-212.  Caremax provided a copy of the job announcement for its position and time dedicated to each task:

• Prepare, edit, and translate organizational publications for clients and potential clients (20% of the time);

• Respond to requests for information from the public (10% of the time);

• Establish and maintain cooperative relationships with representatives of communities, clients, and public interest groups (5% of the time);

• Plan and direct development and communication of informational programs to maintain favorable public perceptions of Caremax's accomplishment's and agenda (40% of the time)

• Produce and coordinate production of advertisements and promotions (5% of the tim

• Arrange public appearances, lectures, contests, and exhibits to promote goodwill (5% of the time);

• Study the objectives, promotional policies, and needs of the organization to develop public relations strategies that will influence public opinion and promote ideas and services (10% of the time); and

 • Consult with advertising.

In addition, Caremax provided the following evidence:

• A printout of DOL's Occupational Outlook Handbook ("OOL") describing the public relations specialist occupation.  A.R. 175-77.  The OOH states that employers generally require a

---

[1] The following description of the documents submitted in the original I-129 petition packet and the first RFE is taken from Defendant's Motion for Summary Judgment and Memorandum in support of that motion.

bachelor's degree, and "usually want candidates who have studied public relations, journalism, communications, English, or business."  A.R. 176.

• Thirteen job announcements for public relations jobs from several industries.  A.R. 179- 97.

• Three letters from individuals that Caremax claimed were experts, stating that Caremax needs a public relations specialist with a bachelor's degree.  A.R. 196-202.

• A copy of the diploma and a pay stub for Fang Liu, who Caremax claimed was their prior public relations specialist.  A.R. 205-08.  Liu held a Master's of Business Administration in Global Strategic Management.  A.R. 206.

• Caremax's business brochure.  A.R. 209-12.

On February 8, 2013, USCIS denied Caremax's petition for an H-1B visa.  A.R. 141-50. On July 9, 2013, USCIS reopened Caremax's application and issued a second RFE, asking for more evidence about the proffered position, the company, and Guo's qualifications.  A.R. 120-39.  USCIS also requested an explanation of "inconsistencies" that it found in the record.  A.R. 138.

On October 1, 2013, Caremax responded to the second RFE.  A.R. 30-120.  Caremax provided the following evidence in their response[2]:

• A letter from Caremax's president.  A.R. 59-61.

• Publications from the Public Relations Society of America ("PRSA") describing the public relations profession.  A.R. 62-94.  The publications state that there is "no single set of 'ideal' qualifications" and that a college degree is "essential" and a basic grounding in the liberal arts

---

[2] This list of submitted evidence, with the exception of Footnote 3, is taken from the Defendant's Motion For Summary Judgment and Memorandum in Support of that Motion.

"encouraged." A.R. 65. Caremax withdrew the three letters from experts Caremax submitted

with the first RFE, and proffered the PRSA publications as a replacement. A.R. 55-56.

• Four job announcements for public relations professionals with employers in health- related

industries. A.R. 95-102. Caremax stated that it was unable to find job announcements for a

public relations specialist with an employer of its size and income. A.R. 55.

 • Credentials evaluations from the European-American University, a university located in

Dominica and unaccredited in the United States, and from Career Consulting International.

A.R. 104-14, 263.[3] Caremax stated that it was withdrawing the credentials evaluation originally

provided with its application, and replacing it with these two credentials evaluations. A.R. 56.

• A statement from Guo. A.R. 117.

• Copies of pay stubs for Liu and Guo. A.R. 118.

On November 8, 2013, USCIS denied the I-129 petition filed by Caremax. A.R. 2-28.

USCIS denied the petition on two grounds. First, USCIS concluded that the evidence was

insufficient to show that Guo was qualified to perform the services of a specialty occupation.

A.R. 8-14. USCIS concluded that the evidence failed to show that Guo possessed a United

States bachelor's degree, its foreign equivalent or that Guo's education was equivalent to a

bachelor's degree. A.R. 8-14. It also stated, erroneously, that Caremax provided no evidence

that Guo possessed a bachelor's degree in any discipline issued by a college or university in the

United States.

Second, USCIS determined that "public relations specialist" is not a specialty

---

[3] Guo's official sealed transcripts from Northeastern University, Monterey Institute of International Studies, and Dominican University, as well as his diploma from MIIS were all submitted but appear to have been misplaced by USCIS.

occupation because the position does not require a bachelor's degree in English or any specific specialty. A.R. 14-28. USCIS found that a bachelor's degree or higher in a specific specialty is not normally the minimum requirement of entry into the profession of public relations specialist given that the education requirement varies depending on the employer. A.R. 18-20. USCIS also stated that Caremax was also unable to show that it was common in its industry to require that public relations professionals possess a bachelor's degree in any specific area. A.R. 20-25. Furthermore, the decision found that Caremax failed to show that tasks and duties of its public relations specialist position were so complex or unique that only a person with a bachelor's degree in a specific area could perform its duties. A.R. 25-26. Caremax was unable to show that its prior practices demonstrated that it normally required a degree or its equivalent for the position. A.R. 26-28. Lastly, USCIS determined that Caremax could not show that the nature of the specific duties was so specialized or complex that the skills associated to perform the duties are associated with the acquisition of a bachelor's degree. A.R. 28. Therefore, finding that the proffered position is not a specialty occupation, USCIS denied Caremax's visa petition. A.R. 28.

## IV. Summary of the Argument

This Court should grant summary judgment on behalf of Plaintiffs because the agency abused its discretion in denying Caremax's petition for an H-1B visa on behalf of Guo. First, Caremax provided the required evidence that Mr. Guo is in fact the holder of the U.S. equivalent of a Bachelor's degree in English. USCIS rejected these evaluations for reasons not found in the regulations. This deviation from the regulations to require more evidence than required was an abuse of discretion.

Second, the proffered public relations specialist position is a specialty occupation in that

11

the industry requires a Bachelor's degree in one of a few closely related fields in order to enter

the profession.  Under these facts, USCIS abused its discretion in denying Caremax's H-1B

petition.  Therefore, this Court should grant summary judgment in favor of Plaintiffs.

## V. Argument.

### A. Standard and scope of review

Under the APA, a court may only set aside a final agency action if it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A).  Under this highly deferential standard, a court reviews the agency's decision to

determine if it "articulated a rational connection between the factual findings and its decision."

*See* Fence Creek Cattle Co. v. Forest Serv., 602 F.3d 1125, 1132 (9th Cir. 2010).  The United

States Supreme Court has held that an agency must engage in "reasoned decision-making."

Judulang v. Holder, 132 S.Ct. 476(2011). A court can review whether the decision was based on

"a consideration of the relevant factors" and whether "there has been a clear error of judgment."

Id. at 484).  Courts may resolve APA challenges by summary judgment.  *See* Nw. Motorcycle

Ass'n v. U.S. Dep't Agric., 18 F.3d 1468, 1471-72 (9th Cir. 1994).

### B. Statutory and regulatory background governing H-1B non-immigrant visas

Section 101(a)(15)(H)(i)(b) of the Immigration & Nationality Act ("INA"), 8 U.S.C.

§1101(a)(15)(H)(i)(b) provides, in part, for the classification of qualified nonimmigrant aliens

who are coming temporarily to the United States to perform services in a specialty occupation.

These aliens are classified as "H-1B" nonimmigrants. Employers seeking to employ foreign

nationals under the H-1B program must demonstrate that the alien beneficiary possesses the

qualifications necessary for the specialty occupation position and that the proffered position is a

specialty occupation.  See 8 C.F.R. § 214.2(h)(4)(iv)(A). A "specialty occupation" is an

occupation that requires "theoretical and practical application of a body of highly specialized knowledge, and [the] attainment of a baccalaureate or higher degree or its equivalent as a minimum requirement for entry into the occupation in the United States."  8 U.S.C. § 1184(i)(1)(A)(1) (2012).

The regulations further define specialty occupation as an: occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor . . . and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States. 8 C.F.R. § 214.2(h)(4)(ii)(2012) (emphasis added).

In order for the position to qualify as a specialty occupation within the meaning of the statute, the position must meet one of the following criteria: (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree; (3) The employer normally requires a degree or its equivalent for the position; or (4) The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree. 8 C.F.R. §214.2(h)(4)(iii)(A).    In order for the employer to establish that the beneficiary is qualified to perform the services of a specialty occupation, the employer must show that the beneficiary meets one of the following requirements: (A) Full state licensure to practice in the occupation, if such licensure is required to practice in the occupation, (B) Completion of the degree described in paragraph (1)(B) for the occupation, or (C)(i) experience in the specialty equivalent to the

13

completion of such degree, and (ii) recognition of expertise in the specialty through progressively responsible positions relating to the specialty. 8 U.S.C. § 1184(i)(2).

The burden of proof rests on the employer petitioner to establish that the proffered position is a specialty occupation and that the alien beneficiary qualifies for the specialty occupation.  See 8 U.S.C. § 1361.  Further, it is the job duties, not the title of the proffered position, that are determinative when deciding if a position is a specialty occupation.  See EG Enters, Inc. v. Dep't of Homeland Sec., 467 F. Supp. 2d 728, 736 (E.D. Mich. 2006).   After receiving the employer's H-1B petition, USCIS adjudicators make a case-by-case, fact-sensitive determination of whether the job at issue is a specialty occupation.  See All Aboard Worldwide Couriers, Inc. v. Att'y Gen., 8 F. Supp. 2d 379, 382 (S.D.N.Y. 1998).

USCIS adjudicators are instructed to consult the Department of Labor, Bureau of Labor Statistics OCCUPATIONAL OUTLOOK HANDBOOK ("OOH") as a source for determining industry standards for minimum requirements to enter the field. See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 147 (1st Cir. 2007) (stating that agency acts within its discretion in reviewing the OOH when evaluating employment-based visa petitions).

> C. USCIS abused its discretion by deviating from the regulations and practices by rejecting two educational equivalency evaluations that meet the standards and which state that Guo has the equivalent of a Bachelor's degree in English.

Mr.  Guo is qualified to perform the services of a specialty occupation because he possesses the equivalent to a Bachelor's degree in English or its equivalent. See 8 U.S.C. § 1184(i)(1)(B), (2)(B); 8 C.F.R. § 214.2(h)(4)(iii)(C)(1).  USCIS may consider a credentials evaluation in determining whether education, training, and experience are the equivalent to a United States bachelor's degree or higher.  8 C.F.R. § 214.2(h)(4)(iii)(D).  The credentials

14

evaluation, however, is not binding on the agency, but instead it is treated as an advisory

opinion of the beneficiary's qualifications.  <u>Matter of Sea</u>, Inc., 19 I. & N. Dec. 817, 820

(Comm'r 1988).  The credentials evaluation may be given lesser weight when it is "not in

accord with previous equivalencies or is in any way questionable."  Id.   Caremax provided

credentials evaluations from the European-American University and Career Consulting

International, both certifying that Guo's education from the Civil Aviation University in China,

Northeastern University in Massachusetts, the Monterey Institute in Monterey, California, and

Dominican University of California in are equivalent to a bachelor's degree in the United

States.[4] A.R. 104-14.

Additionally, USCIS abused its discretion in rejecting the credentials evaluation from

the European-American University for not complying with the regulations when in fact it does.

A credentials evaluation may be accepted from an institution of higher education to show that

the beneficiary obtained the equivalent of a United States degree if the evaluation is issued by

"an official who has authority to grant college-level credit for training and/or experience in the

specialty at an accredited college or university which has a program for granting such credit

based on an individual's training and/or work experience."  8 C.F.R. § 214.2(h)(4)(iii)(D)(1).

The credential evaluations were in fact submitted by an official who has authority to grant

college-level credit for training in the specialty at an accredited University. USCIS has regularly

accepted evaluations from these exact evaluators. (See AAO Decisions of August 10, 2010 and

---

[4] In fact, all of the official, sealed transcripts from these schools, along with the
diploma for Mr. Guo's Masters Degree awarded by the Monterey Institute of International
Studies were submitted to USCIS, still in their envelopes, as part of the credentials evaluations
submitted in response to the RFE issued in July 2013.

February 4, 2013).

USCIS cannot require that a Petitioner submit evidence beyond that required by the regulations. <u>Kazarian v. USCIS</u>, 596 F. 3d. 1115, 1121-1122 (9th Cir. 2010). Any evidence required broader than the regulations is not faithful to the text of 8 C.F.R. § 214.2(h)(4)(iii). The agency abused its discretion by rejecting out of hand credential evaluations that not only meet the standards, but which have been accepted numerous times by USCIS in the (recent) past.

> <u>D. Caremax's petition should have been approved because "public relations specialist" is a "specialty occupation."</u>

As USCIS noted in its decision of November 18, 2013, the OOH's profile of the public relations specialist profession states that employers normally seek candidates who have a Bachelor's degree "public relations, journalism, communications, English, or business."  A.R. 19, 176 (OOH Handbook).  The premise that one must have a degree in a specific field of study for the occupation to be a specialty occupation has been rejected more than once by the federal courts, as this premise:

> "ignores the realities of the statutory language involved and the obvious intent behind them.  The knowledge and not the title of the degree is what is important. Diplomas rarely come bearing occupation-specific majors.  What is required is an <u>occupation</u> that requires highly specialized knowledge and a prospective employee who has attained the credentialing indicating possession of that knowledge." <u>Residential Finance v.</u><u>USCIS</u>. (D.Ohio, March 12, 2012). See, also <u>Tapis Int'l v. I.N.S.</u>, 94 F. Supp. 2d 172, 175-76 (D. Mass. 2000) (rejecting agency interpretation because it would preclude any position from satisfying the "specialty occupation" requirements where a specific degree is not available in that field).

Thus it is not the major that is important, it is the knowledge acquired in the specific classes (writing, communications) that are what are required and which are taught as a part of the majors listed above.

Software Engineers used to suffer the same plight: there was no one particular degree in "Software Engineering." See Matter of Precision Programming, Inc., EAC 9220251006 (AAU Apr. 22, 1993). Prior to this field, and even now, it is acknowledged that there are a few fields of study that are closely related with overlapping course requirements, that prepare one to be a Software Engineer, such as Computer Science, Computer Engineering, Software Engineering or Mathematics, as is stated by the OOH.

It is unfortunate that USCIS continues with this extremely narrow interpretation of what constitutes a specialty occupation, but even in light of this interpretation, the current position qualifies as a specialty occupation. USCIS abused its discretion by ignoring the OOH and the reality of the job market.

        2. A bachelor's degree in English or closely related degree is a common
        requirement for a public relations specialist.

The OOH states clearly that a Bachelor's degree in English is a minimum entry level position for a public relations specialist. *With* regard to the job listings, Caremax may meet this prong through job announcements of similarly situated employers.  See Shanti, Inc. v. Reno, 36 F. Supp. 2d 1151, 1165 (D. Minn. 1999).  However, it is nearly impossible, if not actually impossible to find a job announcement that is written to meet the exact standards elucidated by USCIS. A.R. 55.

Caremax did submit six job announcements from employers in an industry related to health care.  A.R. 95-102, 181-83. See A.R. 95-96 (announcement from an eating disorder treatment center), 97-100 (announcements from a children's hospital and another hospital without a description of the employer); A.R. 101-05 (announcement from "Presence Health" without a description of the employer); A.R. 181 (announcement from "Molina Healthcare"

without a description of the employer); 8 A.R. 181-82. USCIS rejected them because it could not be determined if the size and number of employees is similar to Caremax.  There is no guidance given by USCIS as to how one could ever find a job listing that shows the income and size of the employer.

Using Caremax's income, which is in the millions of dollars, as an indicator as to what level of education is required for a public relations specialist, makes no sense either. Clearly with an income of over $2 million in 2011, Caremax can easily afford a Public Relations Specialist in order to help the company expand into new markets. It is unclear how the need for a public relations specialist with proper credentials would change whether company revenues are $2 million, $10 million, or $100 million. At a certain level, the numbers are not relevant. What is relevant is whether companies which need and can afford to hire public relations specialists require that these individuals hold Bachelor's degrees in the majors mentioned in the OOH, including English.

In addition, Caremax provided documents from the Public Relations Society of America ("PRSA"), the leading public relations trade organization in the country. 9  A.R. 62-94.  .  The PRSA documents clearly show that a Bachelor's degree in one of the aforementioned fields is the minimum degree necessary to enter the field. These documents were also rejected by USCIS because they are publications rather than letters. USCIS should have given these documents some weight as the documents are official indicators of the industry standard from the leading authority in the field.

Under this criterion, Caremax must demonstrate that it normally requires a bachelor's degree or its equivalent for its public relations specialists.  See 8 C.F.R. § 214.2(h)(4)(iii)(A)(3).

Defendants try to paint Caremax as being inconsistent regarding its prior hiring practices

18

for this position. Caremax provided its job announcement to support its allegation that it requires a bachelor's degree in journalism, communications, English, or business, as well as evidence that it previously employed Fang Liu as a public relations specialist.  When asked for more details, Caremax stated that when the operation was small, Ms. Liu performed the tasks of public relations but as the company grew, a professional public relations specialist was needed.

## VII. CONCLUSION

The agency abused its discretion in denying Caremax's petition for a non-immigrant H-1B visa. Caremax submitted voluminous evidence to show that Guo is qualified to perform services in a specialty occupation. The record also shows that the public relations specialist position is a specialty occupation as required under the Act.  USCIS acted irrationally and arbitrarily by asking for evidence that is irrelevant, extraneous, or non-existent, disregarded evidence that was submitted, and irrationally and erroneously asked for more evidence than the statutes require. For these reasons, his Court should grant Plaintiffs' motion for summary judgment and grant all relief requested by Plaintiffs.

DATED:  February 23, 2014

                               Respectfully submitted,

                               /s/ Love Macione

                               Love Macione
                               SCHEIN & CAI, LLP
                               111 North Market St., Suite 1020
                               San Jose, CA 95113
                               T: (408) 436-0789
                               F: (408) 436-0758
                               lmacione@sacattorneys.com
                               Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  The CM/ECF system will distribute a copy to plaintiff and counsel for each of the parties upon filing.

Dated:  February 24, 2014

Respectfully submitted,

/s/ Love Macione

Love Macione
SCHEIN & CAI, LLP
111 North Market St., Suite 1020
San Jose, CA 95113
T: (408) 436-0789
F: (408) 436-0758
lmacione@sacattorneys.com
Attorneys for Plaintiffs