United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREMAX INC,<br><br>    Plaintiff,<br><br>  v.<br><br>ERIC HOLDER,<br><br>    Defendant.<br>_____/ | No. C 13-02412 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |

In this declaratory relief action, Plaintiffs ask the Court to determine, in the context of an administrative agency's decision not to grant a nonimmigrant visa, whether a non-citizen employee's job constitutes a "specialty occupation" under the Immigration and Nationality Act ("INA") and if so, whether the non-citizen employee meets the minimum qualifications for employment in said "specialty occupation." The distinction between specialty occupation and non-specialty occupation is important because the INA authorizes temporary visas for qualified nonimmigrant aliens who are sponsored by an employer to perform a "specialty occupation." Health services corporation CareMax and its proposed public relations specialist Sen Guo (collectively, "Plaintiffs") argue that the government defendants ("Defendants") have incorrectly relied on a determination by United States Citizenship and Immigration Services ("USCIS") that Guo's position as an entry-level public relations specialist is not a "specialty occupation," and that even if it is, Guo does not meet the

1 minimum qualifications for employment in a specialty occupation. Because USCIS's
2 decision was not arbitrary, capricious, or an abuse of discretion, the Court GRANTS
3 Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary
4 Judgment.

**I.    BACKGROUND**

Plaintiff/petitioner CareMax, Inc. is an adult health care service provider based in San Rafael, California that employs forty-two people and reports annual proceeds of more than $2 Million. Certified Administrative Record ("A.R.") (dkt. 18) at 6. On April 30, 2012, CareMax filed a petition with USCIS to obtain an H-1B nonimmigrant specialty worker visa for Sen Guo, a Chinese national, so that he could work as an entry-level Public Relations Specialist for a term of three years. Id. at 4, 6. Guo has a Degree in "English" from the Civil Aviation University of China. A.R. at 254-57. Guo also attended other institutions of higher-education, including Northeastern University in Massachusetts, and the Monterey Institute and Dominican University in California, but did not provide transcripts or diplomas to USCIS.[1] Plaintiffs' Motion for Summary Judgment ("P. MSJ") (dkt. 25) at 15; see A.R. at 13-14. It is not clear based on the administrative record what Guo studied at these U.S. schools or what degrees, if any, he received.

On October 16, 2012, USCIS issued a Request For Evidence for information related to Guo's employment, including a more detailed job description, information about CareMax, and evidence that the job was a "specialty occupation" within the meaning of the INA. See id. at 6, 213-18. Plaintiffs responded with substantial amounts of evidence on January 8,

---

[1] Plaintiffs claim to have submitted sealed transcripts from the Civil Aviation University of China, Northeastern University in Massachusetts, the Monterey Institute in California, and Dominican University of California with the credential evaluations submitted to USCIS. P. MSJ at 15 & n.4. Defendants state that Plaintiffs never submitted the transcripts, except for one from the Civil Aviation University of China, and note that the only transcript listed in the table of contents of Plaintiffs' submissions to USCIS is Guo's transcript from the Civil Aviation University of China. Defendants' Response to Plaintiffs' Motion for Summary Judgment ("Def. Response") (dkt. 26) at 2. The transcript issue came up again at oral argument on April 4, 2014. Counsel for Plaintiffs reiterated that her office filed the transcripts with USCIS, and that the agency must have misplaced them. Defendants reiterated that they never received U.S. university transcripts. Based on this representation, the Court gave Plaintiffs leave to file copies of the transcripts purportedly submitted to USCIS. On April 13, 2014, Plaintiffs filed what appear to be some transcripts from three U.S. universities. See Exhibits (dkt. 30-1).

1  2013.  See id. at 6, 151-212.  USCIS denied CareMax's petition on February 8, 2013.  Id. at
2  6.  Plaintiffs filed a complaint for declaratory and injunctive relief in this Court on May 29,
3  2013.  See generally Compl. (dkt. 1).

4      USCIS later reopened Plaintiffs' visa petition, sent a new Request For Evidence, and
5  the parties agreed to stay the district court proceedings.  See A.R. at 6; Stipulation to Stay
6  (dkt. 14).  Plaintiffs submitted evidence on October 1, 2013.  Id. at 6.  Plaintiffs' submissions
7  were substantial, and included both new evidence and evidence from previous submissions.
8  See id. at 6-8.  Plaintiffs submitted a wide range of information about CareMax, Guo, Guo's
9  education at the Civil Aviation University of China, the public relations profession,
10 credential evaluations written by evaluators at the European-American University and Career
11 Consulting International, and job listings for public relations positions at other companies.

12     USCIS again denied Plaintiffs' petition on November 8, 2013.  A.R. at 4.  On
13 November 15, 2013, the 120-day stay expired, and Plaintiffs filed an Amended Complaint.
14 See Amended Compl. (dkt. 16); see also Stipulation to Stay.  Defendants filed their Motion
15 for Summary Judgment on January 27, 2014.  See generally Def. MSJ.  Plaintiffs filed their
16 own Motion for Summary Judgment approximately one month later.  See generally P. MSJ.
17 Defendants filed a response to Plaintiffs' Motion on March 10, 2014.  See generally Def.
18 Response.

19 **II.   LEGAL STANDARD**

20     The INA permits qualified non-citizen temporary workers to work in the United States
21 if they are sponsored by an employer in a "specialty occupation."  8 U.S.C.
22 § 1101(a)(15)(H)(i)(b).  A specialty occupation requires "(A) theoretical and practical
23 application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or
24 higher degree in the specific specialty (or its equivalent) as a minimum for entry into the
25 occupation in the United States."  8 U.S.C. § 1184(i)(1).  The Code of Federal Regulations
26 provides a non-exhaustive list of fields that may satisfy the specialty occupation requirement.
27 See 8 C.F.R. § 214.2(h)(4)(ii) (listing fields such as accounting, law, mathematics,
28 engineering, medicine, and others that are presumed "specialty occupations").

3

The employer can also establish that the employee performs a specialty occupation by showing that the position meets one of four criteria:

1. A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
2. The degree requirement is common to the industry in parallel positions among similar organizations, or in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
3. The employer normally requires a degree or its equivalent for the position; or
4. The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). The employer has the burden of proof to establish that the employee's position meets one of these requirements. 8 U.S.C. § 1361.

In addition to establishing that a position is a "specialty occupation," the H-1B visa petitioner must also demonstrate that the non-citizen worker is <u>qualified</u> to work in such a position. See 8 U.S.C. § 1184(i)(2). The Regulations require that the non-citizen employee satisfy one of four qualification criteria: that the employee (1) hold a U.S. bachelor degree (or higher) required by the specialty occupation; (2) hold an equivalent foreign degree; (3) hold an equivalent state license authorizing him to practice the specialty occupation; or (4) hold a combination of education, specialized training, and work experience qualifying him to practice the specialty occupation. 8 C.F.R. § 214.2(h)(4)(iii)(C).

Under the Administrative Procedure Act ("APA"), a district court can only set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a deferential standard, "and a court is not to substitute its judgment for that of the agency." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983); see <u>Sierra Club v. Clark</u>, 756 F.2d 686, 690 (9th Cir. 1985) ("Traditionally, an agency's interpretation of its own regulation is entitled to a high degree of deference if it is not unreasonable."). However, the court may determine whether "there has been a clear error of judgment by the agency and whether the agency action was based upon a consideration of relevant factors." <u>Nance v. EPA</u>, 645 F.2d 701, 705 (9th Cir. 1981).

4

Courts routinely resolve APA challenges by summary judgment. Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1481 (9th Cir. 1994). The district court "is not required to resolve any facts in a review of an administrative proceeding." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985). The purpose of the district court in deciding a motion for summary judgment, then, "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id. An agency's decision is arbitrary and capricious if it "offered an explanation for the its decision that [ran] counter to the evidence before the agency." Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 101 F.3d 1443, 1448 (9th Cir. 1996).

## III. DISCUSSION

Defendants advance two primary arguments in support of affirming the USCIS decision to deny Guo's H-1B visa. First, Defendants argue that the position itself—"public relations specialist"—is not a specialty occupation. Defendants argue that, while most public relations jobs require a bachelor's degree, they generally do not require a specific type of bachelor's degree. Second, Defendants argue that, ignoring the specifics of the "public relations specialist" position, Guo lacks the minimum qualifications for an H-1B specialty occupation visa. Defendants argue that Guo's combination of foreign and U.S. education is not equivalent to a bachelor's degree, in a required area of study, from an accredited U.S. university.

Defendants argue that Plaintiffs did not present enough evidence during the administrative proceedings to show that "public relations specialist" is a specialty position within the meaning of the INA or to prove Guo's qualifications. The Court addresses Defendants' two arguments in order, since the decision on the first—that Plaintiffs failed to satisfactorily demonstrate that the public relations specialist position is a "specialty occupation"—obviates an in-depth discussion of the second.

**A. Plaintiffs Failed to Demonstrate that "Public Relations Specialist" is a Specialty Occupation Worthy of an H-1B Visa**

Defendants argue that the listed position, "public affairs specialist," is not a "specialty occupation" under the INA. Def. MSJ at 13-18. Defendants argue that Plaintiffs failed to

5

1  present sufficient evidence showing that an entry-level public relations position at CareMax
2  is a specialty occupation.  Id.

3  Where a position is not presumed to be a "specialty occupation," the Regulations
4  provide criteria for courts to determine whether the job is a "specialty occupation."  A
5  position may be a "specialty occupation" if it satisfies one of four established criteria,
6  including: (1) a bachelor's degree or higher is the minimum requirement for entry into the
7  profession; (2) a bachelor's degree is the common requirement for an occupation in the
8  relevant industry, or the position is so complex that it can be performed only by an individual
9  with a degree; (3) the employer has typically required a degree or its equivalent for the
10 position in the past, and (4) the position's responsibilities are so specialized that the
11 employee must hold a bachelor's degree or higher.  8 C.F.R. § 214.2(h)(4)(iii)(A).

### i. Requirement of a Bachelor's Degree or Its Equivalent

13 The parties do not dispute that a public relations specialist must generally have a
14 bachelor's degree.  The parties disagree, however, as to whether a generalized bachelor
15 degree requirement is sufficient to render the position specialized enough for an H-1B visa.
16 Defendants argue that because a wide range of degrees are acceptable for employment as a
17 public relations specialist, the position does not require a degree in a specific specialty.  Def.
18 MSJ at 13-14.  Plaintiffs argue that the degree requirement alone makes the position a
19 specialty occupation.  P. MSJ at 16-17.  Plaintiffs misunderstand the law.

20 Fundamentally, an H-1B visa allows an employer to reach outside of the U.S. to fill a
21 temporary position because of a special need, presumably one that cannot be easily fulfilled
22 within the U.S.  A position that requires applicants to have any bachelor's degree, or a
23 bachelor's degree in a large subset of fields, can hardly be considered specialized.  See Fred
24 26 Importers, Inc. v. Dept. of Homeland Sec., 445 F. Supp. 2d 1174, 1179-80 (C.D. Cal.
25 2006) ("A 'specialty occupation' is defined as the attainment of a bachelor's degree in a
26 specific specialty." (emphasis added)); cf. Tapis Int'l v. I.N.S., 94 F. Supp. 2d 172, 175-76
27 (D. Mass. 2000) (noting that an equivalent degree may be acceptable where no degree is
28 offered in the specific specialty).

USCIS referred to the Department of Labor's Occupational Outlook Handbook ("OOH") profile of the public relations specialist position to determine if a specific bachelor's degree is a minimum requirement for entry into the profession. See A.R. at 18-20. The OOH profile states that public relations specialists "typically need a bachelor's degree. Employers usually want candidates who have studied public relations, journalism, communications, English, or business." Id. at 176. While a bachelor's degree appears to be a minimum requirement for entry into the profession, the OOH makes clear that employers are not particularly concerned with what type of bachelor's an applicant has achieved. As USCIS noted, the OOH does not support a claim that "public relations specialist" is a specialty occupation. Id. at 20 ("There is no apparent standard for how one prepares for a career as a Public Relations Specialist and no requirement for a degree in a specific specialty.").

### ii. Bachelor's Degree Common To The Industry

USCIS next considered (1) whether a specific bachelor's degree is commonly required in parallel positions among similar employers, or (2) whether the position is so complex that an applicant must hold a specific degree. A.R. at 20-26. On the first issue, USCIS again considered the OOH description, as well as numerous job postings, and documentation from the Public Relations Society of America ("PRSA"). Id. at 20-25. On the second issue, USCIS reviewed a statement from CareMax regarding the complexity of the position, wage information, and Department of Labor wage guidelines. Id. at 25-26.

First, Plaintiffs provided insufficient evidence that a specific bachelor's degree is commonly required in parallel positions among similar employers. As stated above, the OOH profile only supports the claim that a public relations specialist needs a bachelor's degree, not a degree in a specific specialty. The PRSA documents are similar. See A.R. 62-67. These documents state that "a college degree is essential," but do not list a specific type of degree or subset of degrees. A.R. 65. Additionally, the OOH and PRSA documents are not highly probative, because they are general publications and do not apply to the CareMax position specifically.

Plaintiffs also submitted nearly twenty job postings in the public relations industry. See A.R. 95-102, 180-96. USCIS addressed each one and found that none of them supported a finding that a specific degree is required for parallel positions in CareMax's industry. A.R. 21-25. Plaintiffs submitted no evidence to demonstrate that any of the employers listing jobs were in the same industry as CareMax or that any of these jobs was parallel to CareMax's public relations specialist position. Even assuming the positions are identical and in similar industries, only one job posting mentions an English degree as a requirement, and that posting also states that a degree in Marketing, Communications, or Journalism would be sufficient. A.R. at 23; 99-100. The rest of the job postings either specify only that a bachelor's degree, four-year degree, or college degree is required, or list a range of acceptable specialties such as Marketing, Business, Communications, Journalism, and Public Relations. See A.R. at 21-25. Plaintiffs did not meet their burden of proving that parallel positions in similar industries require a bachelor's degree in English.

Second, Plaintiffs provided no evidence that CareMax's public relations specialist position is so complex that a bachelor's degree in a specific specialty is required. USCIS considered a statement from CareMax and its supporting documentation with respect to the complexity of the public relations specialist position. A.R. at 25-26. While CareMax's statement indicates that the position is very complex, USCIS noted that CareMax submitted paperwork to the Department of Labor classifying the position as Wage Level One. Id. The Department of Labor wage guidelines state that Wage Level One is for employees who "perform routine tasks that require limited, if any, exercise of judgment. . . . These employees work under close supervision and receive specific instructions on required tasks and results expected." Id. at 26, 278. An entry level position with entry level pay is hardly so complex or unique that it requires an applicant with a bachelor's degree in a specific specialty. Accordingly, USCIS did not abuse its discretion in finding that the public relations specialist position is not a "specialty occupation" under this factor.

/ / /

/ / /

8

### iii. Previous Employment of Public Relations Specialist

CareMax submitted conflicting evidence as to whether it had previously employed a public relations specialist. See A.R. at 26-27. CareMax submitted a letter stating that this was its first-ever public relations specialist position, id. at 60, and submitted another letter stating that CareMax Vice-President Fang Liu was previously the company's public affairs specialist, id. at 168. Regardless of which letter is true, both lead to the same conclusion. If this is CareMax's first-ever public relations specialist position, then the company cannot claim that it typically requires a bachelor's degree in English. On the other hand, even if Liu was the company's previous public relations specialist, Liu's qualifications do not support the company's claim that it typically requires a bachelor's in English for its public relations specialist position. Liu holds a Master's Degree in Global Strategic Management, not a bachelor's in English. See A.R. 206. USCIS did not abuse its discretion in finding that Plaintiffs failed to satisfy this factor.

### iv. Specialized Nature And Complexity Of Specified Duties

Based on the above discussion, CareMax's public relations specialist position is not highly specialized or complex such that a specific bachelor's degree (or higher) is required. CareMax stated that the position requires a degree in Communications, English, Journalism, or a related field because applicants need good writing and communications skills. See A.R. at 60. Writing and communications skills are common among a broad range of bachelor's recipients. The requirements of an entry-level public relations position that pays roughly $40,000 per year are not "so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A). Accordingly, USCIS did not abuse its discretion in determining that Plaintiffs failed to satisfy this factor.

**B.     Guo Does Not Hold a U.S. Bachelor's Degree or an Equivalent Foreign Degree that Qualifies Him for the Purported Specialty Occupation**

Even assuming that Guo's position is a "specialty occupation," Defendants argue that Guo is nevertheless unqualified for employment in a specialty occupation under the INA. See Def. MSJ at 10-13. The parties do not dispute that Guo has not obtained a U.S.

9

bachelor's degree, they instead focus on whether Guo has achieved the <u>equivalent</u> of a U.S. bachelor's degree in English. Defendants argue that Guo's education is not equivalent to a qualifying U.S. bachelor degree. <u>Id.</u> In response, Plaintiffs argue that they submitted proper credential evaluations and transcripts to USCIS demonstrating that Guo's combined education is equivalent to a U.S. bachelor's degree in English. P. MSJ at 14-16. Credential evaluations from either a college official[2] or a credentials evaluation service are acceptable evidence of an H-1B beneficiary's qualifications. <u>See</u> 8 C.F.R. § 214.2(h)(4)(iii)(D).

USCIS evaluated Plaintiffs' transcript from the Civil Aviation University of China and credential evaluations from two institutions. <u>See</u> A.R. at 11-14. USCIS thoroughly analyzed all three of these items, and did not abuse its discretion in finding that Plaintiffs failed to meet their burden to establish Guo's qualification for employment in a specialty occupation. <u>Id.</u> at 9-14.

First, USCIS laid out Guo's course of study at the Civil Aviation University of China. <u>Id.</u> at 9-10. Guo took several English-related courses in college, most of which appear to have taught speaking, writing, and translating. <u>See id.</u> at 9-10, 12; <u>see also id.</u> at 251-53. After comparing Guo's Chinese college transcript to a typical U.S. English bachelor's program, USCIS determined that the degree is not the equivalent of a U.S. bachelor's degree in English. <u>Id.</u> at 10-11. Plaintiffs did not provide any additional evidence in an attempt to equate Guo's Chinese degree with a U.S. bachelor's degree in English. <u>Id.</u> at 11. Accordingly, USCIS did not abuse its discretion in finding that Guo's Chinese degree is not equivalent to a U.S. bachelor's degree in English or another course of study that might uniquely qualify him as a public relations specialist.

Second, USCIS considered a credential evaluation from the European-American University to determine if Guo's overall qualifications, including both foreign and U.S. education, were equivalent to a U.S. bachelor's degree in a field required by the specialty occupation. <u>Id.</u> at 12. The evaluation relied on Guo's transcripts from China and various

---

[2] Said official must have the "authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university." 8 C.F.R. § 214.2(h)(4)(iii)(D).

1 U.S. universities he attended, but USCIS did not receive the actual transcripts (except for
2 Guo's Chinese transcript) to weigh the evaluation's credibility.[3]  See id. at 12-13; see also id.
3 at 104-14.  Additionally, because the European-American University is located in the
4 Commonwealth of Dominica and does not have U.S. accreditation, USCIS gave this
5 credential evaluation little, if any weight.  See id.; see also 8 C.F.R. § 214.2(h)(4)(iii)(D)
6 (requiring credential evaluation to come from an official at an accredited U.S. university);
7 Matter of Sea, Inc., 19 I. & N. Dec. 817, 820 (Comm'r 1988) (noting that credential
8 evaluations are not binding, and may be discounted when "questionable").  USCIS did not
9 abuse its discretion in finding that this credential evaluation failed to demonstrate Guo's
10 qualification to work in a specialty occupation.

11       Based on the administrative record, Guo lacks the minimum qualifications for
12 employment in a specialty occupation.  Furthermore, as noted in Part III.A, above,
13 CareMax's "public relations specialist" position is not a specialty occupation within the
14 meaning of the INA.  Because the burden was Plaintiffs' to prove both Guo's qualifications
15 and the position's classification as a specialty occupation, and because USCIS's
16 determination on both issues—that Guo is unqualified and that the position is not a specialty
17 occupation—was not "arbitrary, capricious, an abuse of discretion, or otherwise not in
18 accordance with law," the Court GRANTS Defendants' Motion for Summary Judgment and
19 DENIES Plaintiffs' Motion for Summary Judgment.

20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /

---

[3] As stated above, Plaintiffs filed what appear to be transcripts with the Court.  See Exhibits (dkt. 30-1).  The Court is reluctant to give these documents any weight because they were not before the administrative agency, and thus are not properly in the administrative record.  However, the Court does note that based on its findings detailed in this opinion, the content of these late-filed transcripts would not affect the outcome in this case.

11

## IV. CONCLUSION

For the foregoing reasons, the Court GRANT Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: April 16, 2014

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE